2020 IL App (2d) 190845
No. 2-19-0845
Opinion filed September 30, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* APPOINTMENT OF A SPECIAL STATE'S ATTORNEY, on Behalf of Frank Haney, Chairman of the Board of Winnebago County, | ) ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | No. 19-MR-161 |
| (Frank Haney, Petitioner-Appellee, v. The Winnebago County Board, Respondent (Marilyn Hite Ross, Winnebago County State's Attorney, Objector-Appellant)). | ) ) ) ) | Honorable Donna R. Honzel, Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Jorgensen and Bridges concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner, the Chairman of the Board of Winnebago County, Frank Haney, claimed that the Winnebago County Board (County Board) improperly eliminated by ordinance certain of his duties as chairman and further improperly sought to prevent him from participating in discussion and debate of issues on the County Board floor.   Chairman Haney asked objector, Winnebago County State's Attorney, Marilyn Hite Ross (State's Attorney), to file a declaratory judgment action against the County Board, seeking a judicial determination as to the propriety of the County Board's actions.   The State's Attorney refused, asserting that there was not a good-faith basis to challenge the County Board's actions.   Chairman Haney then petitioned the trial court, pursuant to section 3-9008(a-10) of the Counties Code (55 ILCS 5/3-9008(a-10) (West 2018)), to appoint a

special prosecutor to represent him in the declaratory judgment action. He later filed a second amended petition. The State's Attorney filed a motion pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) for judgment on the pleadings, seeking dismissal of the second amended petition. The trial court denied the motion. Finding that there was a conflict of interest and a colorable claim under section 3-9008(a-10) of the Counties Code, the court then granted Chairman Haney's request to appoint a special prosecutor. The State's Attorney appeals the trial court's judgment denying her section 2-615 motion for judgment on the pleadings and appeals the judgment granting Chairman Haney's petition for the appointment of a special prosecutor. We reverse the court's denial of the State's Attorney's section 2-615 motion and its appointment of a special prosecutor.

¶ 2                                    I. BACKGROUND

¶ 3     The following pertinent facts are gleaned from the record. Chairman Haney was elected chairman of the County Board in 2016. After the election, his relationship with the County Board became progressively contentious. Chairman Haney maintains that the County Board retaliated against his reform agenda in a variety of ways to undercut his agenda and eviscerate his authority as the elected chairman. These actions included the County Board purportedly taking steps to limit his participation in discussion and debate of issues on the County Board floor and the adoption of at least one county ordinance reducing his duties as chairman.

¶ 4     The State's Attorney provided a memorandum opinion to Chairman Haney and the members of the County Board on February 12, 2019, in response to a question certain County Board members raised about "the participation of the Chairman in discussion and debate since the Chairman is not a member of the County Board." Construing various provisions of the Winnebago County Code of Ordinances, the State's Attorney concluded that the chairman was not

able to participate in discussion and debate of issues on the County Board floor, other than to facilitate debate among the members of the County Board and to prioritize and recognize speakers. She concluded by noting that "the governing power of the County lies in the Board which can establish the authority given to the Chairman [citation] and which can also amend its own Rules of Procedure regarding Board participation."

¶ 5    Chairman Haney subsequently informed the State's Attorney of his contention that the State's Attorney had a conflict of interest because she had a statutory obligation to represent both Chairman Haney and the County Board in their "opposing legal interests." The State's Attorney responded that what Chairman Haney characterized as "opposing legal interests" was actually a "difference of opinion," which "does not, in itself, create a conflict of interest for this office."

¶ 6    On April 25, 2019, Chairman Haney formally requested that the State's Attorney represent him as a county officer, pursuant to section 3-9005(a) of the Counties Code, and initiate a declaratory judgment action. See 55 ILCS 5/3-9005(a) (West 2018) (duty of state's attorney to prosecute proceedings brought by county officer). Specifically, Chairman Haney asked the State's Attorney to seek on his behalf a declaration that Ordinance 2019 CO 40, adopted by the County Board on March 28, 2019, was unconstitutional and illegal. Chairman Haney further requested the State's Attorney to confirm in writing that any restrictions imposed on Chairman Haney with respect to floor discussion and debate could safely be ignored or, in the alternative, to seek a declaration that restricting Chairman Haney's floor discussion and debate was illegal.

¶ 7    On May 9, 2019, the State's Attorney informed Chairman Haney that she would not file the requested legal action on his behalf because "to initiate an action without legal basis would be frivolous and irresponsible." In support, the State's Attorney indicated that Ordinance 2019 CO 40, which amended certain sections of the Winnebago County Code of Ordinances, was

constitutional and legal and that, therefore, there was not a good-faith basis to challenge the ordinance. As to the issue of floor discussion and debate, the State's Attorney noted that her memorandum opinion did not itself limit his participation on the County Board floor but that any ordinance consistent with her memorandum would be lawful.

¶ 8    On May 12, 2019, Chairman Haney sent the State's Attorney a copy of a complaint for a declaratory judgment and again asked her to represent him as chairman and file the declaratory judgment action on his behalf. The State's Attorney did not respond. Chairman Haney then petitioned the trial court for the appointment of a special prosecutor, pursuant to section 3-9008(a-10), to represent his interests in the dispute between himself and the County Board. See *id.* § 3-9008(a-10).

¶ 9    On May 22, 2019, Chairman Haney filed his second amended petition. Regarding the discussion-and-debate issue, Chairman Haney's petition sought a special prosecutor to assert his claim that the County Board improperly attempted to stymie his participation in discussion and debate of issues on the County Board floor in that, "[o]nce a question has been put to the Board, the Board does not allow the Chairman to deliberate or debate on the motion." Chairman Haney contended that this runs afoul of section 2-47 of the Winnebago County Code of Ordinances, which provided that "[t]he county board chairman shall preside at all regular and special meetings of the county board but shall not be a member of the county board and shall not vote on any questions before the county board except to break a tie." Winnebago County Code of Ordinances § 2-47 (eff. Nov. 24, 1992). The petition further alleged that the State's Attorney informed him that "she believes that the Board is correct in prohibiting him from speaking at Board meetings."

¶ 10    Regarding the reduction of his duties by ordinance, Chairman Haney's petition sought a special prosecutor to assert his claim that Ordinance 2019 CO 40 improperly stripped considerable

executive authority from the chairman, including, *inter alia*, removing the power to oversee, hire, and fire the county administrator and to recommend a budget, participate in short-term planning, and negotiate agreements. The gravamen of Chairman Haney's complaint in this regard was that the ordinance was unlawful because he and the voters who elected him had a vested right in the duties exercised by the chairman as those duties were set forth at the time he was elected.

¶ 11    The trial court granted the State's Attorney leave to respond to the second amended petition whereupon she filed a motion to dismiss pursuant to section 2-615 of the Code. After the court granted the motion without prejudice, Chairman Haney filed a second amended petition and attached a proposed complaint for declaratory judgment. The State's Attorney again moved to dismiss, arguing that Chairman Haney's claims were not supported by any existing law or good-faith attempt to extend or modify existing law and that, therefore, no actual conflict of interest existed, which was a necessary prerequisite to the appointment of a special prosecutor.

¶ 12    On June 19, 2019, the court denied the State's Attorney's section 2-615 motion. The trial court reasoned that "the strongest argument as far as [*sic*] is whether or not there is an [*sic*] vesting of rights pursuant to the election that the chairman, whether it be Haney or anybody else, has the right and/or the elector has the right to expect that the terms under which that individual was elected were the terms that were to prevail throughout his term." The trial court further stated that "this is the question and this is why it's colorable, it may not be merit [*sic*]—it may not be winning, but at least is a question, whether upon that election, whatever the ordinances were in place, whether or not those are required to persist throughout the term of that elected official." The court then granted Chairman Haney's petition for the appointment of a special prosecutor.

¶ 13    The State's Attorney filed a motion to reconsider, which was denied. The State's Attorney then filed an answer to Chairman Haney's second amended petition, including an objection based

on affirmative matter, *i.e.*, that Chairman Haney's choice of attorney for special prosecutor had a conflict of interest. On August 30, 2019, the trial court rejected the State's Attorney's objections and appointed Chairman Haney's preferred attorney, pursuant to section 3-9008(a-10), limiting the scope of the special prosecutor's appointment to claims involving the ordinance. The State's Attorney timely appeals from the orders denying her section 2-615 motion to dismiss and granting Chairman Haney's petition for the appointment of a special prosecutor.

¶ 14                                    II. ANALYSIS

¶ 15    Initially we consider the standard of review that applies to this appeal. The State's Attorney argues that the trial court erred in not granting her section 2-615 motion to dismiss, because Chairman Haney's petition for the appointment of a special prosecutor "does not plead facts that would establish the legal requirements for the appointment of a special prosecutor" pursuant to section 3-9008(a-10) of the Counties Code. 55 ILCS 5/3-9008(a-10) (West 2018). She further argues that the trial court subsequently abused its discretion in appointing a special prosecutor pursuant to section 3-9008(a-10) (*id.*). A dismissal motion premised upon section 2-615 challenges the legal sufficiency of the complaint, based upon defects apparent on its face. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14. The critical inquiry in resolving a section 2-615 motion to dismiss is whether the allegations in the pleading, considered in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Id.* A cause of action will be dismissed pursuant to section 2-615 "only if it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Id.* We review *de novo* an order granting a section 2-615 motion to dismiss. *Id. De novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). As to whether to appoint a special prosecutor pursuant to section 3-

9008 of the Counties Code, this is a discretionary decision that we review for an abuse of discretion. 55 ILCS 5/3-9008(a-10) (West 2018) ("the court *may* appoint some competent attorney to prosecute or defend the cause or proceeding" (emphasis added)); *In re Appointment of Special Prosecutor*, 2019 IL App (1st) 173173, ¶ 20. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 16 Effective January 1, 2016, the legislature amended section 3-9008 of the Counties Code. It now provides, in pertinent part:

"(a-10) The court on its own motion, or an interested person in a cause or proceeding, civil or criminal, may file a petition alleging that the State's Attorney has an *actual conflict of interest* in the cause or proceeding. The court shall consider the petition, any documents filed in response, and if necessary, grant a hearing to determine whether the State's Attorney has an actual conflict of interest in the cause or proceeding. If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an *actual conflict of interest* in a specific case, the court may appoint some competent attorney to prosecute or defend the cause or proceeding." (Emphasis added.) 55 ILCS 5/3-9008(a-10) (West 2018).

Accordingly, when a petition for a special prosecutor is brought under section 3-9008(a-10), appointment is permissible only where there exists an "actual conflict of interest." See *In re Appointment of Special Prosecutor*, 2019 IL App (1st) 173173, ¶¶ 36, 48.

¶ 17 "Actual conflict of interest" is not defined by the statute. The preamendment version of the statute provided for the appointment of a special prosecutor where "the State's Attorney *** *is interested in* any cause or proceeding, civil or criminal, which it is or may be his duty to

prosecute or defend." (Emphasis added.) 55 ILCS 5/3-9008(a) (West 2014). The exact same "is interested in" language was also used in the Attorney General Act, which governs the appointment of special attorneys general in the event of a conflict. 15 ILCS 205/6 (West 2018). An even earlier version of the statutes, which applied to both the state's attorneys and the attorney general, employed the same "is interested in" language as a prerequisite to the appointment of a special prosecutor. Ill. Rev. Stat. 1975, ch. 14, ¶ 6. A variety of cases interpreting "interest" in these predecessor statutes limited the "is interested in" language to those situations where the State's Attorney or the Attorney General was interested as (1) a private individual or (2) an actual party to the action. See *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 400-01 (1977); *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560, 569 (1996). In that nothing in the language of section 3-9008(a-10) or its legislative history suggests that the legislature intended to alter the case-law driven interpretation of "is interested in" when it substituted "actual conflict of interest," we will continue to apply the preamendment analysis found in our caselaw. See *In re Appointment of Special Prosecutor*, 2019 IL App (1st) 173173, ¶ 39 (construing "actual conflict of interest" in same manner as "is interested in").

¶ 18 Clearly, neither of the two identified "interest" situations delineated in the above cases applies to the State's Attorney here: the State's Attorney is not "interested" in the Chairman Haney-Winnebago County Board dispute as a private party, nor is she an actual party to the proposed action. Both parties agree, however, that this does not end our inquiry, in light of the First District's decision in *Suburban Cook*, which is the only reported decision to address section 3-9008 in the context of a state's attorney's refusal to represent an elected official due to a difference of opinion about the applicable law. *Suburban Cook*, 282 Ill. App. 3d at 570-71.

¶ 19 In *Suburban Cook*, the superintendent of the Suburban Cook County Regional Office of Education sought funding for his office from the Cook County Board, which the board denied. *Id.* at 564. The superintendent then asked the Cook County State's Attorney to file suit against the Cook County Board. The Cook County State's Attorney declined to file suit, given his understanding that the Cook County Board was not responsible for the funding. *Id.* at 571. The state's attorney further suggested that the superintendent not engage private counsel, as the state's attorney was the superintendent's legal representative. *Id.* at 564. Disagreeing, the superintendent hired private counsel to file suit against the Cook County Board and asked the trial court to appoint his counsel as a special prosecutor pursuant to section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 1992)). *Suburban Cook*, 282 Ill. App. 3d at 568. While the court agreed that the superintendent was entitled to the appointment of a special prosecutor, it determined that the superintendent was a state officer and appointed private counsel as a special Attorney General under section 6 of the Attorney General Act (15 ILCS 205/6 (West 1992)). *Suburban Cook*, 282 Ill. App. 3d at 568.

¶ 20 On appeal, the Appellate Court, First District, first determined that the trial court erred in appointing private counsel as a special attorney general in light of section 3A-15 of the School Code (105 ILCS 5/3A-15 (West 1992)), which specifically obligated the state's attorney, and not the attorney general, to represent the superintendent. *Suburban Cook*, 282 Ill. App. 3d at 570. Turning then to whether a special prosecutor should have been appointed as an interested party under section 3-9008, the court acknowledged that the state's attorney was neither a private party interested in the dispute nor a party to the litigation, as was generally required before a special prosecutor could be appointed under the statute. *Id.* at 569. The court further noted that the case did not involve a conflict where the state's attorney sought to represent separate public officials in

a dispute between them. *Id.* at 570. Rather, at issue was "the very troublesome question of the right to representation of an elected official when his opinion of the law applicable to his office is in conflict with the opinion of the [state's attorney] whose statutory duty is to represent that elected official." *Id.* at 570-71.

¶ 21 In answering this question, the *Suburban Cook* court recognized that the Code of Professional Responsibility applies to lawyers acting in their official capacity. *Id.* at 575 (citing *In re Vrdolyak*, 137 Ill. 2d 407, 422 (1990)). Further, it noted that the supreme court had approved the appointment of a special assistant attorney general to represent a State retirement system where the attorney general, not otherwise interested in the litigation, was representing a State agency on the other side of the dispute, to " 'remove[ ] the taint of perceived conflict.' " *Id.* at 573 (quoting *People ex rel. Sklodowski v. Illinois*, 162 Ill. 2d 117, 127 (1994)). Accordingly, the court concluded, "where an unreconcilable conflict arises between two officials the State's Attorney is obliged to represent," "[i]f the official is able to establish a colorable claim which the State's Attorney is unwilling to support[,] or if the State's Attorney is representing two agencies which are in conflict, the court should be able to exercise its discretion and to appoint private counsel." *Id.* at 575.

¶ 22 We agree with the *Suburban Cook* analysis. In doing so, however, we note our disagreement with a subsequent court's understanding that the appointment power exercised in *Suburban Cook* arose from the common law and not section 3-9008. See *Tully v. Edgar*, 286 Ill. App. 3d 838, 845-46 (1997) ("[T]he court had authority under the common law to appoint private counsel ***."). Rather, we conclude that an "actual conflict of interest," as understood in section 3-9008(a-10), necessarily includes the circumstance where a state's attorney is obligated to represent both sides of a conflict but refuses to represent one side notwithstanding a colorable

claim. See *Suburban Cook*, 282 Ill. App. 3d at 575; see also 55 ILCS 5/3-9005(a)(3), (4) (West 2018) (obligating the State's Attorney to "commence and prosecute all actions and proceedings brought by any county officer in his official capacity" and to "defend all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county").

¶ 23    Here, the State's Attorney's section 2-615 motion to dismiss Chairman Haney's petition to appoint a special prosecutor contends that Chairman Haney has not raised a colorable claim, which is a prerequisite for the appointment of a special prosecutor under the instant circumstances.

¶ 24    Black's Law Dictionary (10th ed. 2014) defines "colorable claim" as "[a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) similarly construes a viable claim as one that is "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." We apply these concepts to our consideration of the State's Attorney's section 2-615 motion to dismiss Chairman Haney's petition because Chairman Haney has not raised a colorable claim.

¶ 25                                      A. Vested Right

¶ 26    The State's Attorney contends that the trial court erred in denying her section 2-615 motion to dismiss upon finding that Chairman Haney's vested-right argument contained a "nugget" of a colorable claim. Chairman Haney's second amended petition for the appointment of a special prosecutor contends that he has a colorable claim warranting the appointment of a special prosecutor, because five ordinances passed by the County Board combined to "restrict or eliminate executive functions and executive powers that reside with the office of Chairman." In reviewing

this contention, we note that the only ordinance Chairman Haney specifically identifies is Ordinance 2019 CO 40, which he characterizes as "removing the power of the Chairman to oversee, hire and fire the county administrator, as well as remov[ing] the Chairman's ability to recommend a budget, participate in short-term planning and negotiate agreements." The State's Attorney contends that the trial court erred in finding a colorable claim, because the law does not support Chairman Haney's argument that he had a "vested right" to the duties ascribed to his office at the time of his election, later removed by Ordinance 2019 CO 40.

¶ 27 Section 4(d) of article VII of the Illinois Constitution provides that "County officers shall have those duties, powers and functions provided by law and those provided by county ordinance. County officers shall have the duties, powers or functions derived from common law or historical precedent unless altered by law or county ordinance." Ill. Const. 1970, art. VII, § 4(d). The language of section 4(d) expressly allows for the alteration of common-law or historical powers by the enactment of a county ordinance. See *id.* Consistent with section 4(d) of article VII of the Illinois Constitution, section 5-1087 of the Counties Code (55 ILCS 5/5-1087 (West 2018)) grants county boards the authority to allocate duties to county officials, including those officials elected by the voters of the entire county, if the modifications do not alter duties prescribed by state law. It provides that "[n]o county board may alter the duties, powers and functions of county officers that are specifically imposed by law. A county board may alter any other duties, powers or functions or impose additional duties, powers and functions upon county officers. In the event of a conflict[,] State law prevails over county ordinance." *Id.*

¶ 28 Indeed, consistent with the above, we note section 2-50 of the Winnebago County Code of Ordinances, adopted in 1992, and titled "Limitation of Authority," which provides:

"No provision of this division is intended to vest in or grant to the county board chairman any duty or any authority which is vested by general law or by ordinance in any other county officer, official or employee. No provision of this division shall be construed to delegate to the county board chairman authority to be performed by the county board; *nor shall the county board chairman have the power to bind, obligate or commit the county in any manner except as provided herein or by the express grant of authority by the county board*." (Emphasis added). Winnebago County Code of Ordinances § 2-50 (eff. Nov. 24, 1992).

As this section demonstrates, long before the election of Chairman Haney and the development of his contentious relationship with the County Board, it was understood that, with the exception of statutorily designated powers, the chairman's powers were the exclusive purview of the County Board.

¶ 29    It necessarily follows then that, even were Chairman Haney vested with duties, powers, or functions derived from common law or historical precedent in a general sense, the County Board has the power to alter those duties at will, so long as doing so does not contravene state law, which Chairman Haney does not contend. See *Blanchard v. Berrios*, 2016 IL 120315, ¶ 22 (even assuming that, under common law an elected county officer is vested with the power to perform his duties without any oversight by another county officer, the terms of section 4(d) of article VII of the Illinois Constitution specifically authorize modification of that power by county ordinance).

¶ 30    To escape the otherwise inevitable conclusion that Ordinance 2019 CO 40 is constitutional, Chairman Haney first relies on *Dunne v. Cook County*, 164 Ill. App. 3d 929 (1987). In *Dunne*, the president of the Cook County Board successfully sued the board members to declare ordinances unconstitutional that removed from the president the power to appoint or remove

members of their staffs. *Dunne*, however, is of no avail to Chairman Haney because, unlike here, the *Dunne* ordinances contravened a state statute explicitly giving the president of the Cook County Board the appointment power at issue. *Id.* at 936; see also Ill. Rev. Stat. 1985, ch. 34, ¶ 1101 (president of Cook County Board appoints all employees unless otherwise provided). Equally unavailing for Chairman Haney is that the *Dunne* ordinances transferred executive powers to the board, which could not be done without a referendum, as Cook County, unlike Winnebago County, was a home rule unit of government. *Dunne*, 164 Ill. App. 3d at 935; Ill. Const. 1970, art. VII, § 6(f) (requiring referendum to alter form of government of home-rule unit). Further, Winnebago County does not have an executive form of government under division 2-5 of the Counties Code (55 ILCS 5/2-5001 *et seq.* (West 2018)), which enumerates the statutory duties of a county board chairman. Rather, Winnebago County is a township form of government, which vests the great majority of legislative and administrative duties in the County Board. See *id.* §§ 2-1001, 2-1005. Chairman Haney's reliance on *Dunne* is thus misplaced.

¶ 31    Chairman Haney further relies on *Tully*, 286 Ill. App. 3d 838, and *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399 (1997), for the proposition that his duties as of the date of his election are vested and thus protected from legislative interference.

¶ 32    In *Tully*, a voter successfully challenged the constitutionality of a law that terminated the terms of each of the then-sitting trustees of the University of Illinois, who had been elected to their positions. *Tully*, 286 Ill. App. 3d at 839-41. In *East St. Louis Federation of Teachers*, the plaintiffs were unsuccessful in challenging a statute that allowed a State Board of Education panel to remove elected school board members, because that statute predated the election of the school board members. *East St. Louis Federation of Teachers*, 178 Ill. 2d at 405, 414-15. These cases

are inapposite, however, because Ordinance 2019 CO 40 does not remove Chairman Haney from office midterm or otherwise convert his office from an elected to an appointive position.

¶ 33    Recognizing this, Chairman Haney likens the diminution of his duties to a constructive removal from office, complaining that he has been reduced to a "ribbon cutter." As we previously noted, however, the County Board has the unfettered discretion to modify the duties of the chairman, except to the extent that those duties are constitutionally enshrined or provided by statute. In that Chairman Haney continues to serve in the office to which he was elected by the voters, neither *Tully* nor *East St. Louis Federation of Teachers* supports his position.

¶ 34    Accordingly, Chairman Haney's vested-right claim is not colorable. We therefore agree with the State's Attorney that the trial court erred in finding that Chairman Haney had a colorable claim regarding his vested-right argument.

¶ 35                              B. Discussion-and-Debate Claim

¶ 36    Chairman Haney's petition for the appointment of a special prosecutor also contends that he has a colorable claim regarding whether the County Board has the power to prohibit him from participating in discussion and debate of issues on the floor. Though the report of proceedings is not entirely clear on this point, it appears that the trial court concluded that Chairman Haney's discussion-and-debate claim did not present a colorable claim. We reach this conclusion given that the court referenced only the vested-right argument as a colorable claim in denying the section 2-615 motion to dismiss and given that the court limited the scope of the special prosecutor's appointment to claims involving the ordinance. We agree that Chairman Haney's discussion-and-debate claim is not colorable for purposes of appointing a special prosecutor.

¶ 37    Initially, we note that the State's Attorney correctly asserts that Chairman Haney's petition's claim that the County Board "approved one critical change prohibiting the Chairman

from participating in debate at County Board meetings" is a bare assertion otherwise unsupported in his pleading. Having noted this, we decline the State's Attorney's invitation to go outside the record to view purportedly publicly available recordings of Chairman Haney's continued participation in discussion and debate at County Board meetings. Instead, we will consider whether Chairman Haney has a colorable claim in the context of the State's Attorney's memorandum opinion advising Chairman Haney and the members of the County Board that the chairman, as a nonmember of the County Board, essentially had no more right to speak than members of the general public.

¶ 38 Chairman Haney asserts that, because the chairman presides over all regular and special County Board meetings and breaks tie votes, he "must be allowed to comment, ask questions of the Board members and have an ability to have unhindered debate over matters for which he may need to vote." In support of this contention, Chairman Haney cites his right to speak and debate as an elected official and his right to political speech as protected by the United States and Illinois Constitutions. See U.S. Const., amend. I; Ill. Const. 1970, art. I, § 4. Beyond resorting to these hallowed constitutional provisions, however, Chairman Haney fails to direct us to any case law or other authority that specifically addresses his argument.

¶ 39 The State's Attorney's memorandum opinion, issued at the request of several County Board members, addressed a question raised "regarding the participation of the Chairman in discussion and debate since the Chairman is not a member of the County Board per Section 2-47." It noted that section 2-47 of the Winnebago County Code of Ordinances provides that "[t]he county board chairman shall preside at all regular and special meetings of the county board *but shall not be a member of the county board* and shall not vote on any question before the county board except to break a tie." (Emphasis added). Winnebago County Code of Ordinances § 2-47 (eff. Nov.

24, 1992). As a nonmember of the County Board, the opinion stated, "the Chairman is not included in the ability to participate in discussion or debate on an issue on the Board floor other than to facilitate debate among the members of the County Board through recognition of a member to speak." The opinion observed that section 2-62 of the Code of Ordinances requires the chairman to maintain decorum and determine questions of order and that sections 2-63 and 2-65 enumerate the power of the chairman to recognize speakers and prioritize the order in which speakers may address the County Board. See Winnebago County Code of Ordinances §§ 2-62, 2-63, 2-65 (eff. Dec. 4, 2018). In conclusion, the opinion stated that "the governing power of the County lies in the Board which can establish the authority given to the Chairman [citation] and which can also amend its own Rules and Procedures regarding Board participation [citation]. Ultimately, it is up to the County Board to decide how it wishes to control discussion and debate."

¶ 40 Section 2-1001 of the Counties Code provides that members of the public and employees of counties have the right to time, subject to reasonable constraints, to comment to or ask questions of the County Board at regular and special meetings. See 55 ILCS 5/2-1001 (West 2018). As a nonmember of the County Board, albeit a county employee and an elected official, Chairman Haney certainly has the right to speak to issues consistent with the political speech rights of the general citizenry. Whether as chairman he should be afforded additional discussion-and-debate-opportunities is a political question and not a legal question. And for that reason, Chairman Haney's discussion-and-debate claim is not colorable for purposes of appointing a special prosecutor.

¶ 41                    C. Appointment of a Special Prosecutor

¶ 42 Having determined above that the trial court erred in denying the State's Attorney's section 2-615 motion to dismiss, because there were no colorable claims raised in Chairman Haney's

second amended petition, and thus that there was no actual conflict of interest for purposes of section 3-9008(a-10), it necessarily follows that there was no basis for the appointment of a special prosecutor. Accordingly, the trial court abused its discretion in appointing a special prosecutor pursuant to section 3-9008. See *id.* § 3-9008(a-10).

¶ 43                               III. CONCLUSION

¶ 44     Given the foregoing, we conclude that the trial court erred in denying the State's Attorney's section 2-615 motion to dismiss on the pleadings (735 ILCS 5/2-615 (West 2018)) and abused its discretion in appointing a special prosecutor under section 3-9008(a-10) of the Counties Code (55 ILCS 5/3-9008(a-10) (West 2018)).

¶ 45     Accordingly, the judgment of the circuit court of Winnebago County is reversed.

¶ 46     Reversed.

**No. 2-19-0845**

| | |
|---|---|
| **Cite as:** | *In re Appointment of Special State's Attorney*, 2020 IL App (2d) 190845 |
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 19-MR-161; the Hon. Donna R. Honzel, Judge, presiding. |
| **Attorneys for Appellant:** | Marilyn Hite Ross, State's Attorney, of Rockford (David J. Kurlinkus and Paul A. Carpenter, Assistant State's Attorneys, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kenneth M. Florey, M. Neal Smith, and Margaret L. MacNair, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee. |